In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1621

DAVID BERNARDO-DE LA CRUZ,

*Petitioner*,

*v.*

MERRICK B. GARLAND, Attorney General of the United States,

*Respondent*.

Petition for Review of an
Order of the Board of Immigration Appeals.
No. A206-304-124

ARGUED NOVEMBER 1, 2023 — DECIDED AUGUST 15, 2024

Before SYKES, *Chief Judge*, and ST. EVE and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Petitioner David Bernardo-De La Cruz has lived in the United States without legal authorization for the past nineteen years. After he was pulled over for speeding in 2014, he conceded removability from the country but applied for cancellation of removal. The Immigration Judge (IJ) denied this discretionary relief but allowed Petitioner to voluntarily depart from the country under 8 U.S.C. § 1229c. The

Board of Immigration Appeals (BIA) affirmed the decision. Petitioner now challenges that ruling, arguing that: the agency exceeded its authority when promulgating 8 C.F.R. § 1240.26(i), which limits the availability of voluntary departure for noncitizens contesting a removal order; the appointment of the temporary BIA judge, who adjudicated his appeal, was unconstitutional; and the IJ and BIA failed to adequately engage with the evidence. For the reasons stated below, the petition for review is denied.

## I. Background

Bernardo-De La Cruz was born in Mexico and entered the United States illegally when he was seventeen. Since arriving here nineteen years ago, he has lived in Indiana where he has worked at a factory and a family farm. Petitioner has two daughters, both of whom are U.S. citizens. He is a senior pastor of his church and an active father to his daughters. He also sends money to his family in Mexico. Although he is separated from the mother of his daughters, the parents share custody and jointly pay for their daughters' needs.

In 2014, Petitioner was pulled over for speeding and subsequently received a notice to appear before an IJ due to his immigration status. In 2017, Petitioner conceded removability during the immigration proceeding, but applied for cancellation of that removal under 8 U.S.C. § 1229b(b)(1).[1] The IJ

---

[1] Section 1229b(b)(1) provides that the Attorney General may "cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States" if the noncitizen meets four requirements. 8 U.S.C. § 1229b(b)(1). The noncitizen must have been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." *Id.* § 1229b(b)(1)(A). The

denied the application, explaining that, although Petitioner had met the first three elements of § 1229b(b)(1), his removal would not cause an "exceptionally high level of hardship" for his daughters as required by § 1229b(b)(1)(D). Once his cancellation request was denied, Petitioner requested voluntary departure under 8 U.S.C. § 1229c, and the IJ granted it.

Petitioner then appealed the IJ's denial of his request for cancellation of removal to the BIA. Relevant here, Petitioner argued that the IJ had failed to make any finding as to whether his children would remain in the United States after his departure. In his view, the IJ also failed to consider evidence that one of Petitioner's daughters needed special educational services. Both errors, according to Petitioner, warranted remand.

The appeal was heard by temporary Appellate Immigration Judge (TAIJ) Gabriel Gonzalez. In denying the appeal, TAIJ Gonzalez upheld the IJ's findings and concluded that the record established Petitioner's daughters would remain in the United States after his removal. As for the daughters' educational needs, the TAIJ acknowledged the evidence in the record indicating that they might require special assistance, but he did not engage with Petitioner's argument challenging the IJ's treatment of this issue. In the end, the TAIJ affirmed the IJ's determination and reinstated the IJ's grant of voluntary

---

noncitizen must be a person of good moral character during that time period and must not have been convicted of certain offenses. *Id.* § 1229b(b)(1)(B), (C). Finally, the noncitizen must establish that "removal would result in exceptional and extremely unusual hardship to … [their] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* § 1229b(b)(1)(D).

departure. In doing so, he warned Petitioner that if he challenged the ruling, he would be subject to immediate removal pursuant to 8 C.F.R. § 1240.26(i).[2]

## II. Standard of Review

Where, as here, the BIA affirms an IJ's decision and adds its own reasoning, we examine both decisions on appeal. *See Khan v. Holder*, 766 F.3d 689, 695 (7th Cir. 2014); *Georgieva v. Holder*, 751 F.3d 514, 519 (7th Cir. 2014). We review factual and credibility determinations under the substantial evidence standard, reversing only "if the facts *compel* an opposite conclusion." *Minghai Tian v. Holder*, 745 F.3d 822, 828 (7th Cir. 2014) (emphasis in original). We review constitutional claims

---

[2] That section provides, in relevant part:

> If, prior to departing the United States, the alien files a petition for review pursuant to section 242 of the Act (8 U.S.C. 1252) or any other judicial challenge to the administratively final order, any grant of voluntary departure shall terminate automatically upon the filing of the petition or other judicial challenge and the alternate order of removal entered pursuant to paragraph (d) of this section shall immediately take effect, except that an alien granted the privilege of voluntary departure under 8 CFR 1240.26(c) will not be deemed to have departed under an order of removal if the alien departs the United States no later than 30 days following the filing of a petition for review, provides to [the Department of Homeland Security (DHS)] such evidence of his or her departure as the [Immigration and Customs Enforcement] Field Office Director may require, and provides evidence DHS deems sufficient that he or she remains outside of the United States.

8 C.F.R. § 1240.26(i).

No. 21-1621　　　　　　　　　　　　　　　　　　　　　　5

and questions of law *de novo*. *See Antia-Perea v. Holder*, 768 F.3d 647, 658–59 (7th Cir. 2014).

### III. Analysis

Petitioner raises three arguments here. First, he challenges the agency's authority to promulgate 8 C.F.R. § 1240.26(i), which limits a noncitizen's eligibility for voluntary removal in certain circumstances. Next, he argues that TAIJ Gonzalez was unlawfully appointed. Finally, he asserts that both the IJ and BIA committed legal error by failing to meaningfully engage with the evidence. We address these arguments in turn.

### A. Voluntary Departure

If an IJ orders a noncitizen to be removed from the country, that noncitizen may apply to depart voluntarily instead. *See* 8 U.S.C. § 1229c. This voluntary departure process allows a noncitizen subject to a removal order to freely organize his affairs before leaving and exempts him from certain bars to reentry, including a ten-year ban on readmission. *See Dada v. Mukasey*, 554 U.S. 1, 11 (2008) (describing the benefits of voluntary departure). Voluntary departure status is not easy to achieve. The noncitizen is subject to a variety of requirements, including a showing of good moral character and the ability to pay for their own departure. 8 U.S.C. § 1229c(b).

Section 1229c bestows upon the Attorney General the authority to "by regulation limit eligibility for voluntary departure … for any class or classes of aliens." *Id.* § 1229c(e). Relying on that authority, the Attorney General has restricted the ability of noncitizens to gain voluntary departure if they file a judicial challenge to their underlying order of removal. 8 C.F.R. § 1240.26(i). Any such challenge would cause the IJ's grant of voluntary departure to "terminate automatically"

and the removal order "shall immediately take effect." *Id.* Therefore, under § 1240.26(i), a noncitizen cannot both contest a removal order and take advantage of voluntary departure.[3]

But there is an exception. If a noncitizen departs the country "no later than 30 days following the filing of a petition for review," then that individual "will not be deemed to have departed under an order of removal." *Id.* This allows the noncitizen to leave the country, avoid the ten-year ban on readmittance, and still challenge his removal order.

Petitioner argues that, by promulgating § 1240.26(i), the agency exceeded its statutory authority under 8 U.S.C. §§ 1229a(a)(3) and 1229c. But rather than discussing § 1240.26(i)'s elimination of voluntary departure for a noncitizen contesting removal, Petitioner instead focuses on the 30-day exception and contends that it creates an *ultra vires* avenue for relief not contemplated by § 1229c, which § 1229a(a)(3) proscribes. *See* 8 U.S.C. § 1229a(a)(3) ("Unless otherwise specified in this Act, a proceeding under [§ 1229a] shall be the *sole and exclusive* procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States.") (emphasis added).

---

[3] Previously, a noncitizen who obtained a voluntary departure order could file a petition for review and ask the court of appeals to stay the voluntary departure deadline while the petition was pending. *See, e.g.*, *Lopez-Chavez v. Ashcroft*, 383 F.3d 650, 654 (7th Cir. 2004). Thus, a noncitizen subject to a removal order could both seek the benefits of voluntary departure and appeal the removal order, all the while remaining in this country. As Petitioner sees it, § 1240.26(i) eliminated that option. (Respondent does not dispute this, and we too will assume that this is the case.)

In considering his argument, we start (as we always do) with the statutory language. Section 1229c states that "[t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense if, at the conclusion of a proceeding under section 1229a of this title, the immigration judge enters an order granting voluntary departure in lieu of removal." *Id.* § 1229c(b)(1). As Petitioner sees it, the phrase "in lieu of" envisions only two avenues by which a noncitizen subject to a removal order can leave the country— a grant of voluntary departure or an order of removal. The 30-day exception in § 1240.26(i), he asserts, impermissibly creates a third scenario: A noncitizen, who files a petition for review, can leave the country without a grant of voluntary departure and "not be deemed to have departed under an order of removal." 8 C.F.R. § 1240.26(i). In such cases, the noncitizen's departure would be governed neither by an order granting him voluntary departure nor by an order of removal—the only two options § 1229c(b)(1) allows. The agency's creation of this third option, Petitioner posits, exceeded its statutory authority under § 1229c(b)(1) and § 1229a(a)(3), hereby invalidating § 1240.26(i) in its entirety.

Until recently, we have applied the familiar framework from *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to determine whether a regulation is a permissible exercise of agency authority. Under *Chevron*, if "Congress has directly spoken to the precise question at issue," that is the end of the inquiry, and the unambiguously expressed intent of Congress controls. *Id.* at 842–43. But "if the statute is silent or ambiguous with respect to the specific issue," courts must decide "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

In applying the *Chevron* framework to this issue, a number of our sister circuits have found that § 1240.26(i) is a permissible exercise of the Attorney General's authority. *See, e.g., Hachem v. Holder*, 656 F.3d 430, 438 (6th Cir. 2011) ("We have no trouble finding valid the regulation promulgated by the Attorney General."); *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 525 (9th Cir. 2012) ("We hold that Congress has unambiguously granted the Attorney General authority to control the scope of voluntary departure grants in § 1229c and that he has reasonably exercised his authority in promulgating the regulation."); *Cordon-Ramirez v. Att'y Gen. of the U.S.*, 604 F. App'x 128, 131 (3d Cir. 2015) (finding § 1240.26(i) "withstands scrutiny under *Chevron*"); *Sarabia-Arredondo v. U.S. Att'y Gen.*, 853 F. App'x 511, 514 (11th Cir. 2021) ("8 C.F.R. § 1240.26(i) is a permissible exercise of the Attorney General's discretion to grant or limit voluntary departure and does not exceed INA § 240B, 8 U.S.C. § 1229c.").

But *Chevron* is no longer the law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. \_\_\_, No. 22-1219, slip op. at 35 (2024) ("*Chevron* is overruled."). In place of *Chevron*'s familiar two-step test, the Supreme Court now instructs us to "exercise [our] independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* We must also be mindful that "when a particular statute delegates authority to an agency consistent with constitutional limits, [we] must respect the delegation, while ensuring that the agency acts within it." *Id.* Applying *Loper*, we have little trouble concluding that § 1240.26(i) falls within the agency's delegated authority under § 1229c.

Congress has granted the Attorney General broad discretion over voluntary departure procedures. *See* 8 U.S.C.

No. 21-1621 9

§ 1229c(b)(1) ("The Attorney General *may* permit an alien voluntarily to depart the United States ....") (emphasis added). And § 1229c(e) empowers the Attorney General to promulgate regulations that "limit eligibility for voluntary departure … for any class or classes of aliens." *Id.* § 1229c(e). Section 1240.26(i) is one such regulation. It limits eligibility for voluntary departure when a noncitizen challenges his order of removal. This limitation is squarely within the authority Congress has given the Attorney General. *Cf. Hachem*, 656 F.3d at 438 (noting that § 1229(c) grants the Attorney General discretion to limit voluntary departure); *Garfias-Rodriguez*, 702 F.3d at 526 (same).

### B. Temporary Board Member

Petitioner next asserts that the TAIJ, who denied his appeal, was unlawfully appointed in violation of the Constitution's Appointments Clause. That clause states that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. At the time TAIJ Gonzalez was appointed, the relevant regulation provided that the Director of the Executive Office for Immigration Review (EOIR), with the approval of the Deputy Attorney General, had the power to "designate one or more senior EOIR attorneys with at least ten years of experience in the field of immigration law to act as temporary Board members for terms not to exceed six months." 8 C.F.R. § 1003.1(a)(4) (2022).[4] Petitioner contends that because the

---

[4] Section 1003.1(a)(4) was revised in April 2024 to state that "[u]pon the recommendation of the [EOIR] Director, the Attorney General may in his discretion appoint" certain qualified individuals "to serve as

regulation permits the EOIR Director, who is not an agency head, to appoint a TAIJ, the process is unconstitutional.

Even if we assume (as Respondent does) that a TAIJ is an "inferior officer" for the purposes of the Appointments Clause, agency documents show that TAIJ Gonzalez was appointed by the Acting Attorney General, not the EOIR Director.[5] To this, Petitioner retorts, the regulations only permit the EOIR Director to appoint a TAIJ, and the Attorney General has "no lawful role in the process." But this is a crabbed reading of the relevant regulations.

Section 1003.1(a)(1) provides, "Board members shall be attorneys appointed by the Attorney General to act as the Attorney General's delegates in the cases that come before them." 8 C.F.R. § 1003.1(a)(1). And, although TAIJs' terms are short-lived, they are nonetheless Board members and possess the same authority as their permanent counterparts, absent the ability to sit *en banc*. *See id.* § 1003.1(a)(4); *Mboba v. Garland*, No. 21-60416, 2023 WL 4836671, at *8 (5th Cir. July 27, 2023) ("To put it simply: TAIJs, though only temporarily appointed, are nonetheless BIA members."); *Rivera v. Garland*, No. 23-

---

temporary Board members for renewable terms not to exceed six months." 8 C.F.R. § 1003.1(a)(4) (Apr. 2, 2024).

[5] The Government provided evidence of Gonzalez's appointment by the Acting Attorney General in a Supplemental Appendix to this appeal. Our review is generally limited to the administrative record, but we may take judicial notice of agency documents to accurately resolve an issue on appeal. *See Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) ("[I]t is well-established that executive and agency determinations are subject to judicial notice."); *Ayele v. Holder*, 564 F.3d 862, 872 (7th Cir. 2009), as amended (July 14, 2009) (taking judicial notice of documents that formed the basis of IJ's decision).

2351, 2024 WL 3309265, at *2 (8th Cir. July 5, 2024) ("Temporary Board members are still Board members.").

Furthermore, Congress expressly allowed the Attorney General to delegate his various powers. *See* 8 U.S.C. § 1103(g) (noting that the Attorney General can "delegate such authority" as he "determines necessary" to carry out his authority over immigration). One example is § 1003.1(a)(4), which provides the EOIR Director with discretion to designate TAIJs for a period not to exceed six months. 8 C.F.R. § 1003.1(a)(4) (2022) (stating that "[t]he Director *may* in his discretion designate [certain qualified individuals] to act as temporary Board members for terms not to exceed six months" and that "with the approval of the Deputy Attorney General, the Director *may* designate one or more senior EOIR attorneys with at least ten years of experience to act as temporary Board members for terms not to exceed six months") (emphasis added). And, contrary to Petitioner's contention, nothing in § 1103(g) or § 1003.1(a)(4) strips the Attorney General of his appointment power. *See Rivera*, 2024 WL 3309265, at *2 (holding that § 1003.1(a)(4)'s delegation of power to the EOIR Director "does not mean that [TAIJs] cannot be appointed by the Attorney General"); *Punin v. Garland*, No. 22-6275, 2024 WL 3418693, at *11 (2d Cir. July 16, 2024) (noting that § 1003.1(a)(4) "nowhere cabined the Attorney General's authority").

Here, the Acting Attorney General appointed Gonzalez, who was referred to him by the EOIR Director. And, under the Vacancies Reform Act, the Acting Attorney General has the same authority as the Attorney General and possesses the constitutional power to fill lower offices. 5 U.S.C. § 3345(a)(2).

Thus, Gonzalez's appointment did not violate the Constitution or agency regulations.

### C. The IJ's Hardship Analysis

Finally, Petitioner contests the legal adequacy of the agency's findings. To obtain cancellation of removal under § 1229b, Petitioner must show, among other things, that his removal would cause "exceptional and extremely unusual hardship to … [his] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D). To qualify, the hardship must be "substantially different from, or beyond, that which would be normally expected from the deportation of an alien with close family members [in the United States]." *Cruz-Moyaho v. Holder*, 703 F.3d 991, 995 (7th Cir. 2012) (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001)).

Although we may not review the agency's exercise of discretion to grant or deny cancellation of removal, *see Martinez-Baez v. Wilkinson*, 986 F.3d 966, 976 (7th Cir. 2021), we retain jurisdiction to review constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D). And where a petitioner claims that the IJ or BIA "completely ignored" the evidence, this is "an allegation of legal error." *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008).

Here, Petitioner argues that, when examining the hardship his family would suffer upon his removal, the IJ failed to make any factual finding regarding where his daughters would reside after Petitioner left the country. But this ignores the record.

In his Application for Cancellation of Removal, Petitioner unequivocally stated that his children would stay in the United States if he were removed. And he reiterated this position during the immigration hearing, leading the IJ to write, "[i]f ordered removed to Mexico, [Petitioner] testified that his daughters would remain in the United States with their mother, which he believes would create emotional hardship upon their separation as well as financial hardship." The IJ then discussed relevant precedent and concluded that there was "insufficient evidence of record to indicate that the emotional or psychological impact of [Petitioner's] departure upon [his] (qualifying relative(s)) would create exceptional and extremely unusual hardship."

To Petitioner, these statements merely recited the record and do not constitute actual findings of fact. But the IJ considered the undisputed fact that Petitioner's children would remain in the United States and then evaluated the hardship that would result from their separation. We see no legal error in this analysis.

Petitioner next claims that the IJ ignored two key pieces of hardship evidence. As we have stated, it is "serious legal error" for an IJ to do so. *Arej v. Sessions*, 852 F.3d 665, 667 (7th Cir. 2017). And where the IJ and BIA "virtually ignore[]" evidence pertaining to a "critical component of the hardship analysis," remand is appropriate. *Champion v. Holder*, 626 F.3d 952, 956–57 (7th Cir. 2010).

To support his claim of hardship, Petitioner presented evidence that his daughters required special educational services. Such circumstances, if significant, may make a petitioner a "strong applicant" for relief from deportation. *Martinez-Baez*, 986 F.3d at 975 (quoting *In re Monreal-Aguinaga*, 23

I. & N. Dec. at 63). Petitioner's daughters received Leveled Literacy Instruction at school to increase fluency and reading comprehension. In particular, the older daughter, W., was (in Petitioner's own words) "a little slow" and had difficulty reading. The IJ discussed this evidence in two sentences (the typographical error in the second sentence is in the original):

> Here, the record indicates that neither of the respondent's daughters have any health problems or special educational needs. Although [Petitioner] testified that his older daughter, [W.], has difficulty reading, there is no evidence that she requires special attention (such as through an Individualized Educational Plan) other [sic] after-school classes.

Focusing on his older daughter, Petitioner believes the IJ gave short shrift to W.'s educational difficulties. In support, he points to letters from W.'s school that discuss her educational needs as well as her participation in after-school classes. Petitioner argues the IJ not only ignored these letters but inexplicably came to the opposite conclusion, construing the IJ's second sentence to read "there is no evidence that she requires special attention … [*or*] other after-school classes."

But we do not think the IJ "completely ignored" evidence of W.'s educational needs. *Iglesias*, 540 F.3d at 531. While the IJ's treatment of the evidence could have been more thorough, he "at least mentioned this evidence," leaving us with "some confidence that [the relevant] materials [were] considered." *Id.* at 532. In this way, this case is distinguishable from *Martinez-Baez*, where the IJ and Board summarily stated that the evidence did not "adequately establish" the presence of educational difficulties for the petitioner's daughter, even though

such evidence was "well covered in the record." 986 F.3d at 976.[6]

Finally, Petitioner contends that the IJ failed to consider a letter from his wife stating that she was not working and was therefore reliant on Petitioner for financial support. Although the IJ did not note this letter in the opinion, he cited Petitioner's own testimony that his wife was in fact employed. This is sufficient evidence for the IJ's finding that Petitioner's wife worked, and we are constrained from concluding otherwise. *See Patel v. Garland*, 596 U.S. 328, 333 (2022) (noting that federal courts do not have jurisdiction to review questions of fact).

## IV. Conclusion

For these reasons, we DENY the petition for review.

---

[6] What is more, we agree with the government that the more reasonable way to read the second sentence is: "Although he testified that his older daughter, [W.], has difficulty reading, there is no evidence that she requires special attention (such as through an Individualized Educational Plan) other *than* after-school classes." If we were to add the "or" as Petitioner suggests, we would expect the phrase "or other after-school classes" to come within the preceding parenthetical, because "other after-school classes" would be a type of "special attention." Thus, using the "or" Petitioner supplies, the sentence would read, "… there is no evidence that she requires special attention (such as through an Individualized Educational Plan *or* other after-school classes)."